IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-118-BO

| | |
|---|---|
| THELMA MARIE ALSTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| J.A. PRIVETTE, et al., ) | |
| ) | |
| Defendants. ) | |

This matter comes before the Court on defendants' motion to dismiss. [DE 15]. It has been fully briefed and is ripe for disposition. For the reasons discussed below, defendants' motion to dismiss is GRANTED.

BACKGROUND

Plaintiff, Thelma Marie Alston, was terminated from her position as housekeeper at defendant WakeMed on March 24, 2015, after she was arrested and charged with misdemeanor larceny of a hospital patient's "Kindle" e-reader. [DE 2, ¶¶ 17–23, 27]. Just over three years later, on March 27, 2018, plaintiff initiated this suit against WakeMed and four individual defendants: J.A. Privette, an officer with the WakeMed campus police who conducted the investigation that resulted in plaintiff's arrest; David Ng, the chief of the WakeMed campus police at the time; Lance Hoover, the housekeeping supervisor; and LaKeila Jackson, an Employee Relations Specialist for WakeMed. [DE 2, ¶¶ 7–10].

On March 18, 2015, a WakeMed patient reported that one of his two Kindle e-readers was missing. [DE 2, ¶¶ 17–21]. The patient had left his belongings in one room when he entered surgery but he was taken to a different room after surgery. [DE 2, ¶¶ 17–18]. When his

belongings were later returned to him, he discovered that one Kindle was missing. [DE 2, ¶ 21]. The patient vacated his original room around 8:15 AM. [DE 2, ¶ 17]. Around 11:30 AM, a certified nursing aide (CNA) entered the patient's original room and collected his belongings, but only found one Kindle. [DE 2, ¶ 18]. At least two other WakeMed employees entered the patient's original room: another housekeeper, who entered at approximately 9:30 AM, and a "Tech," who moved patient's property to his new room. [DE 2, ¶ 17, 22]. At approximately 12:30 PM, plaintiff entered the patient's original room to clean it. [DE 2, ¶ 22]. Plaintiff reported that she, too, found a Kindle while cleaning the room and that she gave it to the same CNA. [DE 2, ¶ 20]. But only one Kindle was delivered to the patient. [DE 2, ¶ 21]. Plaintiff was the last employee to enter the room. [DE 2, ¶ 22].

Defendant Privette investigated the missing Kindle. [DE 2, ¶ 20]. After obtaining the missing Kindle's unique MAC address, Privette discovered that the missing Kindle had connected to particular wireless access points throughout the hospital. [DE 2, ¶¶ 20–24]. In particular, the missing Kindle connected to the access point inside the patient's original room during the time that plaintiff was cleaning the room. [DE 2, ¶ 20]. It also connected to access points in an employee breakroom and a janitor's closet. [DE 2, ¶ 24]. The missing Kindle did not connect to any access points within the hospital after 3:30 PM, the time at which plaintiff left the hospital. [DE 15-1, p. 5]. The Kindle that was still in the patient's possession, however, connected to an access point within the hospital around 5:15 PM. [DE 15-1, p. 5].

On March 20, 2015, plaintiff met with defendants Privette, Hoover, and Jackson. [DE 2, ¶ 25]. Plaintiff alleges that, at that meeting, she was not given *Miranda* warnings and was "compelled . . . to remain in a place where she did not wish to remain" by threats of arrest and imprisonment. [DE 2, ¶¶ 25, 68, 49].

2

Following the questioning, on March 24, 2015, plaintiff was charged with misdemeanor larceny by the WakeMed campus police. [DE 2, ¶ 27]. Following the arrest, defendant WakeMed "terminated [plaintiff's] employment for being charged with the criminal offense of misdemeanor larceny" stemming from workplace conduct. [DE 2, ¶ 31]. Plaintiff alleges that the investigation and charges against her were racially motivated and meant to "put a Black face on WakeMed's enduring problem of patient's property being stolen." [DE 2, ¶¶ 40, 51]. Plaintiff alleges that defendants, collectively, "manufactured probable cause" and "intended to cause [her] severe emotional distress." [DE 2, ¶¶ 86–87]. In August 2015, the Wake County District Attorneys' Office dismissed the charges against plaintiff. [DE 2, ¶ 31].

On March 27, 2018, more than three years after the events at issue, plaintiff filed her Complaint [DE 1]. The Amended Complaint, filed the same day, included seven claims: (1) civil rights violations pursuant to 42 U.S.C. § 1983, (2) civil rights violations pursuant to 42 U.S.C. § 1986, (3) false imprisonment, (4) assault and battery, (5) defamation, (6) intentional infliction of emotional distress, and (7) malicious prosecution. [DE 2]. On June 13, 2018, defendants moved to dismiss pursuant to, among others, Rule 12(b)(6) of the Federal Rules of Civil Procedure for plaintiff's failure to state a claim upon which relief can be granted. [DE 15].

## DISCUSSION

I. Counts I–V of Plaintiff's Amended Complaint

Defendants have moved to dismiss Counts I, II, III, IV, and V under Federal Rule of Civil Procedure 12(b)(6) for plaintiff's failure to timely file each claim within the applicable statute of limitations. When considering a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A court need not

consider "unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet v. Consumeraffairs.com*, 591 F.3d 250, 255 (4th Cir. 2099). "A court may grant a 12(b)(6) motion on statute of limitations grounds . . . if the time bar is apparent on the face of the complaint." *Semenova v. Maryland Transit Admin.*, 845 F.3d 564, 567 (4th Cir. 2017) (quotations omitted). As to the first five counts of plaintiff's Amended Complaint, the "time bar is apparent on the face of the complaint." *See id.*

Plaintiff's Count I, her Section 1983 claim, is barred by the applicable statute of limitations. Section 1983 has no associated statute of limitations, so federal courts "borrow" the applicable provision from the analogous state statute of limitations. *See National Adver. v. City of Raleigh*, 947 F.2d 1158, 1161 (4th Cir. 1991). In North Carolina, the analogous statute is N.C. Gen. Stat. § 1-52(5), which provides for a three-year statute of limitations. *Id.* at 1161–62. Ms. Alston's Section 1983 claim is founded upon her arrest, allegedly without probable cause, on March 24, 2015. [DE 2 ¶ 49]. Because March 24, 2018 was a Saturday, the statute of limitations expired on March 26, 2018. Both plaintiff's Complaint [DE 1] and Amended Complaint [DE 2] were filed on March 27, 2018. Thus, plaintiff's Section 1983 claim is barred by the statute of limitations, and is dismissed.

Plaintiff's Count II, her Section 1986 claim, is also barred by the applicable statute of limitations. Section 1986 claims must have "commenced within one year after the cause of action has accrued." 42 U.S.C. § 1986. All of the events related to plaintiff's claims took place in 2015, and the action was not commenced until 2018. Thus, plaintiff's Section 1986 claim is barred by the statute of limitations, and is dismissed.

Plaintiff's Count III, her false imprisonment claim, is also barred by the applicable statute of limitations. North Carolina requires claims for false imprisonment to be brought within three

4

years. N.C. Gen. Stat. § 1-52(19). Plaintiff bases her false imprisonment claim on two incidents: (1) the March 20, 2015 meeting with defendants Privette, Hoover, and Jackson and (2) the March 24, 2015 arrest and release under unsecured bond at the Wake County Justice Center. [DE 2, ¶¶ 25, 27, 68]. Each of these events took place more than three years before plaintiff's Complaint and Amended Complaint were filed on March 27, 2018. Thus, plaintiff's false imprisonment claim is barred by the statute of limitations, and is dismissed.

Plaintiff's Count IV, her assault and battery claim, is also barred by the applicable statute of limitations. North Carolina requires claims for assault and battery to be brought within three years. N.C. Gen. Stat. § 1-52(19). Plaintiff's assault and battery claim arises from "non-consensual and offensive contact with [her] person during her wrongful arrest." [DE 2, ¶ 76]. That arrest took place on March 24, 2015. [DE 2, ¶ 27]. This was more than three years before plaintiff's Complaint and Amended Complaint were filed on March 27, 2018. Thus, plaintiff's assault and battery claim is barred by the statute of limitations, and is dismissed.

Plaintiff's Count V, her defamation claim, is also barred by the applicable statute of limitations. North Carolina requires claims for defamation to be brought within one year of the publication date of the defamatory words. N.C. Gen. Stat. § 1-54(3). Plaintiff bases her defamation claim on statements made by defendants on March 20, 2015. This was more than one year before plaintiff's Complaint and Amended Complaint were filed on March 27, 2018. Thus, plaintiff's defamation claim is barred by the statute of limitations, and is dismissed.

II. Counts VI–VII of Plaintiff's Amended Complaint

Defendants have also moved to dismiss Counts VI and VII under Federal Rule of Civil Procedure 12(b)(6) for plaintiff's failure to state a claim upon which relief can be granted. To survive such a motion, a complaint must state a claim for relief that is facially plausible. *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the court can "draw the reasonable inference that the defendant is liable for the misconduct alleged," as merely reciting the elements of a cause of action with the support of conclusory statements does not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The court need not accept the plaintiff's legal conclusions drawn from the facts, nor need it accept unwarranted inferences, unreasonable conclusions, or arguments. *Philips v. Pitt County Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

Plaintiff's Count VI, her intentional infliction of emotional distress claim, does not state a claim upon which relief can be granted and is, therefore, dismissed. To state a claim for intentional infliction of emotional distress in North Carolina, a plaintiff must show (1) extreme and outrageous conduct (2) which is intended to cause and (3) does cause (4) severe emotional distress. *Wilkerson v. Duke Univ.*, 229 N.C. App. 670, 675 (2013). To be "extreme and outrageous," conduct "must exceed 'all bounds usually tolerated by decent society.'" *Pardasani v. Rack Room Shoes*, 912 F. Supp. 187, 192 (M.D.N.C. 1996) (quoting *Dickens v. Puryear*, 302 N.C. 437 (1981)). North Carolina courts have rarely found intentional infliction of emotional distress claims actionable in the employment context. *See Atkins v. USF Dugan*, 106 F. Supp. 2d 799, 810–11 (M.D.N.C. 1999) (citing cases where verbal and physical abuse and discrimination were not sufficiently extreme and outrageous).

Plaintiff's intentional infliction of emotional distress claim is founded upon various actions taken by the individual defendants, but taken together and drawing reasonable inferences on plaintiff's behalf, these actions were neither extreme nor outrageous. Even accepting all of plaintiff's factual allegations as true, it is not disputed that the patient left two Kindles in his original room when he went into surgery, plaintiff was the last employee to enter the room, the missing Kindle was in the room at the time plaintiff was cleaning it, the missing Kindle

6

connected to access points near the employee breakroom and janitor's closet during plaintiff's shift, and the missing Kindle did not connect to any hospital access points after plaintiff's shift ended. Defendant Privette investigated the matter, questioned plaintiff, and obtained an arrest warrant from a magistrate judge. The manner in which defendants handled the investigation and subsequent arrest cannot be said to "exceed all bounds usually tolerated by decent society." *See Pardasani*, 912 F. Supp. at 192. Even if plaintiff suffered "insults, indignities, or threats," defendants' collective conduct was neither extreme nor outrageous, and plaintiff's Count VI is, thus, dismissed. *See Howard v. Coll. Of the Albermarle*, 262 F. Supp. 3d 322, 340 (E.D.N.C. 2017), *aff'd*, 697 F. App'x 257 (4th Cir. 2017).

Plaintiff's Count VII, her malicious prosecution claim, does not state a claim upon which relief can be granted and is, therefore, dismissed. To establish a malicious prosecution claim in North Carolina, "a plaintiff must show that the defendant (1) initiated or participated in the earlier proceeding, (2) did so maliciously, (3) without probable cause, and (4) the earlier proceeding ended in favor of the plaintiff." *Turner v. Thomas*, 369 N.C. 419, 425 (2016). In malicious prosecution cases, "[p]robable cause . . . has been properly defined as the existence of such facts and circumstances, known to [defendant] at the *time*, as would induce a reasonable man *to commence* a prosecution." *Id.* (alterations and emphases in original).

It is not clear exactly which defendants are alleged to have "initiated or participated" in plaintiff's prosecution. But even inferring that each defendant participated, plaintiff's claim must be dismissed because her probable cause existed. Again, the undisputed "facts and circumstances" at the time demonstrate, even once all reasonable inferences have been drawn in plaintiff's favor, that a reasonable person would commence a prosecution. Thus, plaintiff's

malicious prosecution claim is dismissed for failure to state a claim upon which relief can be granted.

In sum, plaintiff's complaint fails to allege facts necessary to sustain any actions under state or federal law, and it will be dismissed.

## CONCLUSION

For the foregoing reasons, defendants' motion to dismiss [DE 15] is GRANTED. The Clerk is DIRECTED to close the case.

SO ORDERED, this 22 day of September, 2018.

*Terrence W. Boyle*
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE